Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Olga Leza*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Olga Leza,<br><br>    Plaintiff,<br><br>  v.<br><br>The Prudential Insurance Company of America; JPMorgan Chase Bank, N.A.; JPMorgan Chase Bank, N.A. Disability Plan,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Olga Leza (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

1. U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2. Plaintiff is a resident of Gila County, Arizona.

3. Upon information and belief, JPMorgan Chase Bank, N.A. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by The Prudential Insurance Company of America (hereinafter referred to as "Prudential"). The specific Prudential long-term disability group insurance policy is known as Group Policy No.: G-50684-DE (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees. Upon information and belief, the Prudential Policy may have been included in and be part of an employee benefit plan, specifically named the JPMorgan Chase Bank, N.A. Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Prudential functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

5. Prudential operated under a conflict of interest in evaluating her long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

6. Prudential's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

7. The Company, Prudential and the Plan conduct business within Gila County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

8. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

9. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan, or the Company as a result of being found disabled in this action.

10. Assuming the issue is ripe before the Court (i.e. the "Regular Occupation" timeframe in the Plan and Policy has expired at the time of adjudication by the Court), Plaintiff also seeks a determination that she is disabled and meets the "Any Gainful Occupation" definition of disability set forth in the Plan and/or Policy as all the evidence she submitted to Prudential supports a determination by the Court that she meets the Plan and/or Policy's "Any Gainful Occupation" definition of disability.

11. After working for the Company as a loyal employee for over ***thirty-seven (37) years***, Plaintiff became disabled on or about November 7, 2014, due to serious medical conditions and unable to work in her designated occupation as a Bank Teller. Plaintiff has

remained disabled as that term is defined in the relevant Policy for both "Regular Occupation" and "Any Gainful Occupation" benefits continuously since that date and has not returned to work in any occupation as a result of her serious medical conditions.

12. Following the onset of her disability, Plaintiff filed a claim for short-term disability (STD) benefits which was approved by the Company, and those benefits have been paid and exhausted. The Company's third party claims administrator, Disability Management Services (hereinafter referred to as "DMS"), reviewed the evidence in Plaintiff's STD claim and concluded she was disabled and unable to work in her occupation with the Company. DMS approved Plaintiff's STD claim for its duration and she has exhausted those benefits.

13. Prudential was in possession of Plaintiff's entire STD claim file during its review of her long-term disability claim, but due to its conflict of interest, it failed to reference or consider DMS's decision or the evidence DMS relied on to approve her STD claim in its review of her long-term disability claim.

14. Upon information and belief, the Company's STD Plan contained a "Regular and/or Own Occupation" definition of disability that is similar, if not identical to the "Regular Occupation" definition in Prudential's Policy. In other words, Plaintiff needed to prove only that she was unable to work in her occupation at the Company due to a medical condition in order to be entitled to benefits.

15. Plaintiff alleges that given the fact the STD Plan contained a similar definition of disability as the Policy, and that a different entity, DMS, reviewed and approved Plaintiff's STD claim; DMS's decision is relevant evidence for this Court to consider with regard to the unreasonableness of Prudential's denial of her long-term disability claim. Plaintiff al

16. so alleges DMS's STD review and approval of her claim is evidence of the decision that an independent and un-conflicted fiduciary would make in her long-term disability claim.

17. Plaintiff alleges that DMS and the Company's approval of her STD claim using essentially the same definition of disability, and significantly *less evidence* than what Prudential reviewed in Plaintiff's long-term disability claim, is palpable evidence that Prudential's financial conflict of interest played a role in its denial of her claim.

18. Following the exhaustion of her STD claim (benefits), Plaintiff then filed for long-term disability benefits under the relevant Policy that was administered by Prudential. Prudential made every decision in Plaintiff's long-term disability claim, which was to deny it.

19. Upon information and belief, the relevant Prudential Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

> You are disabled when Prudential determines that:
> - You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
> - You are under the regular care of a doctor; and
> - You have a 20% or more loss in your monthly earnings due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
> - You are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
> - You are under the regular care of a doctor.

20. In support of her claim for long-term disability benefits, Plaintiff submitted to Prudential medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

-5-

21.     In a letter dated February 13, 2015, Prudential informed Plaintiff it was denying her claim for long-term disability benefits.

22.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's February 13, 2015 denial of her disability claim.

23.     As part of its review of Plaintiff's claim, Prudential obtained a medical records only "paper review" from Philip Podrid, M.D., who is a consulting physician for the University Disability Consortium (hereinafter "UDC").  As the attached interrogatory answers confirm (*See* Exhibit "A" to this Complaint), UDC has a long and extensive business relationship with the disability insurance industry and potentially Prudential by providing the type of medical records reviews as occurred in this case.

24.     Plaintiff alleges that UDC may derive a significant amount of annual revenue from its business relationship with the Prudential.

25.     Due to its long business relationship with the disability insurance industry, Plaintiff alleges that UDC may not have had an incentive to implement a system or process to regularly and consistently monitor the independence and impartiality of the medical professionals that it retains to perform the type of reviews that it provided to Prudential in Plaintiff's claim.

26.     Plaintiff alleges that in the review of her claim and due to UDC's extensive business relationship with the disability insurance industry, Dr. Podrid was not independent, objective or impartial with regard to the opinions he rendered regarding whether or not she was disabled.

27.     Upon information and belief, Plaintiff alleges Dr. Podrid may be a long time medical consultant for the disability insurance industry, UDC and/or Prudential.  As a result, Plaintiff believes Dr. Podrid may have an incentive to protect his own consulting

relationship(s) with the disability insurance industry, UDC and/or Prudential by providing medical records only paper reviews, which selectively review, ignore and minimize evidence of disability such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and/or Prudential, and which supported the denial of Plaintiff's long-term disability claim.

28. In a letter a dated April 2, 2015, Prudential notified Plaintiff that it had again denied her claim.

29. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's April 2, 2015 denial of her disability claim.

30. In support of her appeal and claim for long-term disability benefits, Plaintiff submitted to Prudential additional medical, vocational and lay witness evidence which demonstrated that she met any definition of disability set forth in the Policy.

31. Plaintiff submitted to Prudential a June 9, 2015 medical questionnaire and June 2, 2015 narrative letter authored by her board certified physician specialist who opined, "It is my medical opinion that [Plaintiff] is unable to work in any occupation…"

32. Plaintiff also submitted to Prudential a June 23, 2015 medical questionnaire and June 14, 2015 narrative letter authored by her treating medical professional who opined, "At this time, I would not recommend that [Plaintiff] returns to any full time employment."

33. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated July 10, 2015, who after reviewing Plaintiff's aforementioned evidence, the definition of disability in the Policy as well as interviewing her concluded, "It is clear from the medical records as well as my discussion with Ms. Leza that she is unable to perform her past job as a bank teller or any position that may exist in the national economy."

34. As referenced, Plaintiff submitted a complete copy of her STD claim file from the Company which contained the information and medical evidence the DMS relied on when it approved her STD claim.

35. Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or any work environment.

36. In addition to the medical records and reports submitted to Prudential, Plaintiff submitted five (5) sworn affidavits from herself, her husband, her sister, her long-time friend and a prior co-worker, who all confirmed that Plaintiff is unable to work in any occupation and that her medical conditions had not improved in any meaningful way since her date of disability.

37. As part of its review of Plaintiff's claim for long-term disability benefits, Prudential obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing; however, it never disclosed to Plaintiff, either during its administrative review of her claim or following its final denial, the name of the reviewing physician or his/her reports.

38. Upon information and belief, Plaintiff alleges the reviewing physician may be a long time medical consultant for the disability insurance industry and/or Prudential. As a result, Plaintiff alleges the physician may have an incentive to protect his/her own consulting relationship with the disability insurance industry and/or Prudential by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and which supported the denial of Plaintiff's claim.

39. In three (3) separate letters dated September 2, 2015, September 10, 2015 and September 18, 2015, in order to engage Prudential in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Prudential and the opportunity for her and her treating physicians to respond to their reviews prior to Prudential rendering a determination in her claim.

40. Prior to rendering its final denial in Plaintiff's claim, Prudential never shared with Plaintiff the medical records only "paper review" authored by its reviewing physician so she could respond to the report and perfect her claim. Prudential's failure to provide Plaintiff with the opportunity to respond to its reviewing physician's report is an ERISA procedural violation, precluded a full and fair review and violates Ninth Circuit case law.

41. In a letter dated October 6, 2015, Prudential notified Plaintiff it had denied her claim for long-term disability benefits under the Policy. In the letter, Prudential also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

42. In a letter dated December 9, 2015, Plaintiff informed Prudential the treating board certified physician specialist who supported her disability claim had reviewed its October 6, 2015 final denial and provided a December 4, 2015 response letter wherein he detailed numerous inaccuracies in Prudential's final denial. As a result, Plaintiff requested for Prudential to reopen her long-term disability claim and to consider this additional evidence to determine whether it may alter its October 6, 2015 denial of her claim.

43. In a letter dated December 16, 2015, Prudential informed Plaintiff her treating physician's December 4, 2015 letter would be made a part of the administrative record and that it was considering the additional evidence in her claim.

44. In a letter dated December 22, 2015 Prudential informed Plaintiff the additional medical documentation did not alter its prior decision and that it was upholding its October 6, 2015 final denial.

45. Upon information and belief, Prudential's October 6, 2015 denial letter confirms that it failed to provide a full and fair review and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of disability of disability in the Policy.

46. In evaluating Plaintiff's claim on appeal, Prudential owed her a fiduciary duty and had an obligation pursuant to ERISA to administer it "solely in her best interests and other participants" which it failed to do. [1]

47. Prudential failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Prudential's failure to investigate the claim and to engage in this dialogue and to ask for or to obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is a violation of ERISA, of Ninth Circuit case law and a reason she did not receive a full and fair review.

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

48. Plaintiff alleges Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate her claim because the third party vendor it retained and that vendor's reviewing medical professionals were not truly independent or impartial; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and denials; by providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; by failing to engage Plaintiff in a dialogue so she could respond to Prudential's doctors' reports and submit the necessary evidence to perfect her claim and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

49. Plaintiff alleges a reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Prudential undertook as the decision maker and payor of benefits. Prudential's conflict of interest provided it with a financial incentive to deny Plaintiff's claim and when it did, it saved itself money.

50. Plaintiff is entitled to discovery regarding Prudential's aforementioned conflicts of interest, of its third party vendor and of *any* individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature,

extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced Prudential's decision to deny her claim.

51. With regard to whether Plaintiff meets both definitions of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein are so flagrant they justify *de novo* review.

52. As a direct result of Prudential's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled. Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

53. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

54. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she meets the "Regular Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to these benefits, and any other non-

1 disability employee benefits she may be entitled to as a result of that Order, from the date
2 she was first denied these benefits through the date of judgment with prejudgment
3 interest thereon;

4      B.     For an Order directing Defendants to continue paying Plaintiff the
5 aforementioned benefits until such a time as she meets the conditions for the termination of
6 benefits;

7      C.     Assuming the issue is ripe before the Court (i.e. the "Regular Occupation"
8 timeframe in the Plan and/or Policy has expired at the time the Court adjudicates the case
9 and the relevant definition of disability in the Plan and/or Policy is that Plaintiff must be
10 disabled from engaging in "Any Gainful Occupation"), for an Order that the evidence in
11 Plaintiff's claim is sufficient to prove that she also meets the "Any Gainful Occupation"
12 definition of disability set forth in the relevant Plan and/or Policy and is entitled to these
13 benefits, in addition to other non-disability employee benefits with pre-judgment interest
14 thereon;

15      D.     Assuming the Court issues an Order that Plaintiff meets the "Any Gainful
16 Occupation" definition of disability in the Plan and/or Policy, Plaintiff seeks an Order that
17 Defendants must continue to pay these benefits and any other non-disability employee
18 benefits she may be entitled to until such a time as she meets the conditions for the
19 termination of these benefits;

20      E.     Alternatively, if the issue of whether Plaintiff meets the "Any Gainful
21 Occupation" definition of disability in the Plan and/or Policy is not ripe before the Court at
22 the time of adjudication because the "Regular Occupation" timeframe has not expired, or
23 the timeframe has expired, but the Court determines that it is unable to make an "Any
24 Gainful Occupation" determination for any reason, then Plaintiff seeks an Order remanding

25
26

1  her claim to the Plan Administrator for an administrative review where she can submit new
2  and additional evidence so the Plan Administrator may determine whether she meets the
3  "Any Gainful Occupation" definition of disability;

4      F.    For attorney's fees and costs incurred as a result of prosecuting this suit
5  pursuant to 29 U.S.C. §1132(g); and

6      G.    For such other and further relief as the Court deems just and proper.

DATED this 1st day of March, 2016.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff